**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KEVIN COACHMAN,

        Plaintiff,

      V.

GATEWAY FOUNDATION, INC.,

        Defendant.

No. 25 CV 2754

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Kevin Coachman suffers from a substance use disorder and is blind. He sought treatment for his substance use from Gateway Foundation, but it refused to treat him at its Taylor Street location because of the liability risk. Coachman eventually got treatment from another facility, but not until after the denial of services caused him to return to substance use, exacerbated his depression, and induced physical symptoms of stress. Coachman then sued Gateway, alleging that it discriminated against him because of his disability in violation of state and federal law. I granted Gateway's motion to dismiss the original complaint for lack of subject-matter jurisdiction because Coachman failed to adequately allege standing for injunctive relief. Coachman filed a First Amended Complaint, and Gateway once again moves to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. For the reasons discussed below, the motion to dismiss is denied.

## I.  Legal Standards

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A*, 590 U.S. 538, 540 (2020). Coachman, as the party invoking federal jurisdiction, bears the burden of establishing all the elements of Article III standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A motion to dismiss under Rule 12(b)(1) is a facial attack on the complaint, contesting whether the allegations, taken as true, support standing. *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023).

Once subject-matter jurisdiction has been established, a complaint must also contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). While a plaintiff does not need to make detailed factual allegations, he must provide "more than mere 'labels and conclusions,' or a 'formulaic recitation of the elements of a cause of action.'" *Wertymer v. Walmart, Inc.*, 142 F.4th 491 (7th Cir. 2025) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When analyzing the sufficiency of a complaint, I construe it in the light most favorable to the plaintiff, accepting all well-pleaded facts as true and drawing all inferences in his favor. *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter," to "'state a claim to relief that is

2

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## II.    Background

Kevin Coachman is a man in his sixties with several disabilities. [23] ¶¶ 7–9, 42.[1] Coachman is blind with no light penetration, using a white and red cane to help him navigate his environment. [23] ¶¶ 8, 41. In August 2024, Coachman went to the Chicago Behavioral Hospital for emergency in-patient treatment for depression and a substance use disorder. [23] ¶ 42. There, Coachman's social worker gave him a referral for in-patient treatment, identifying two organizations: South Suburban Council and Gateway Foundation. [23] ¶¶ 43–44. Coachman believes those organizations were selected because they accepted his medical insurance and had specific programs best able to address his medical needs. [23] ¶¶ 45–49.

Coachman called both providers the day before he was discharged from Chicago Behavioral Health. [23] ¶ 50. South Suburban Council refused to provide services to Coachman because they do not provide services to anyone who uses a cane. [23] ¶ 50. Gateway operates sixteen substance and alcohol-abuse treatment centers across Illinois, including three in Chicago. [23] ¶ 10. During Coachman's intake interview with Gateway, he told a Gateway employee he was blind. [23] ¶ 51. The employee suggested that Coachman call Gateway's Aurora location every Sunday to seek placement there. [23] ¶ 51. The Aurora location was suggested because it is a

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the First Amended Complaint, [23].

small, one-level facility with no stairs, making it easier for vision-impaired individuals to navigate. [23] ¶ 51.

Coachman repeatedly called the Aurora location over the next two and a half weeks, but it had no available beds. [23] ¶ 55. Eventually, a Gateway employee at the Aurora location suggested that Coachman call Gateway's Taylor Street location because that location should have easier access to an available bed. [23] ¶ 55. Coachman immediately called the Taylor Street location and was told that someone from Gateway would call him back. [23] ¶ 57. After two subsequent callbacks from a Gateway employee, Coachman was told that Gateway would not provide in-patient services to him because he was blind. [23] ¶¶ 57–59.

Coachman was informed that the decision to deny him services was made by a nurse, and he expressed his belief that he should not be denied services because of his disability. [23] ¶¶ 59–60. Upon his request, Coachman was transferred to the nurse who made the decision and, after he explained his disagreement with the decision to deny him services, the nurse hung up on him. [23] ¶ 61. Coachman called back and reached a different nurse who reiterated the prior decision, told him he was denied because he could be a liability, and hung up on him. [23] ¶ 62. That denial caused Coachman to return to substance use and exacerbated his depression. [23] ¶ 63.

Coachman made further efforts to discuss the issue with Gateway, including through counsel, but Gateway did not respond to his requests. [23] ¶ 65. Concurrently with those efforts, Coachman continued to look for other options that could provide

in-patient services to him. [23] ¶ 66. Due to the stress caused by his inability to get in-patient services, Coachman suffered headaches and heightened blood pressure. [23] ¶ 67. In November 2024, Coachman was admitted to Haymarket Center, another facility that provides services for substance use disorders. [23] ¶ 68.

Coachman did not receive the same services at Haymarket that he could have received at Gateway, a larger provider with significantly more resources. [23] ¶¶ 70–74. For example, Gateway provides recreational activities as part of its in-patient programs that Haymarket does not offer. [24] ¶¶ 75–76. Gateway offers more types of coping skills than Haymarket, including mindfulness and relaxation techniques, exercise and nutrition assistance, journaling, activities to find gratitude, and programs focused on connecting with others. [23] ¶ 77. Gateway's services also include more types of therapy, such as dialectical behavioral therapy, cognitive behavioral therapy, medication assisted treatment, motivational interviewing, and dual diagnosis therapies. [23] ¶ 78.

In March 2025, Coachman filed suit against Gateway. [1]. That complaint—which sought declaratory and injunctive relief for violations of the Americans with Disabilities Act, the Rehabilitation Act, and the Patient Protection and Affordable Care Act, as well as damages under the Illinois Civil Rights Remedies Restoration Act—was dismissed for lack of subject matter jurisdiction because Coachman failed to adequately allege that he had standing to seek injunctive relief against Gateway. [22].

Coachman's First Amended Complaint adds new factual allegations and seeks broader relief than before. Coachman adds allegations that Gateway offers services that are unique among the providers available to him. [23] ¶¶ 45–49, 71–81. Coachman also seeks damages under the Rehabilitation Act and the Patient Protection and Affordable Care Act, in addition to the monetary damages previously sought under the Illinois Civil Rights Remedies Restoration Act. [23] ¶¶ D–F.

## III.   Analysis

Gateway moves to dismiss Coachman's First Amended Complaint under Rules 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. [24]. Gateway argues that this court lacks jurisdiction because Coachman has not established his standing to bring these federal claims. As to the state-law claim, Gateway contends that the Illinois Civil Rights Remedies Restoration Act is unconstitutional and preempted by federal law.

### A.   Standing

A plaintiff must demonstrate standing for each claim he presses and for each form of relief that he seeks. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Because Coachman's federal claims seek monetary relief for past harm and injunctive relief for future harm, he must establish that he has standing for each remedy independently. Gateway does not argue in its opening brief, or in its reply, that Coachman lacks standing to seek monetary relief. *See* [25], [31]. Given my independent obligation to ensure subject-matter jurisdiction is present, *Schoenthal v. Raoul*, 150 F.4th 889, 905 n.12 (7th Cir. 2025), I address Coachman's standing for both monetary and injunctive relief.

6

1.    *Monetary Relief*

Statutes passed pursuant to Congress's power under the Spending Clause are "in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Those statutes "may be enforced through implied rights of action," and "private plaintiffs may secure injunctive or monetary relief in such suits."[2] *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 216 (2022). "Punitive damages, on the other hand, are not available." *Id.* (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)). And, since *Cummings*, neither are emotional distress damages. 596 U.S. at 221–22.

While punitive and emotional distress damages are unavailable in suits under the Rehabilitation Act and the Affordable Care Act, all remedies traditionally, generally, or normally available for contract actions remain. *Id.* at 223. That includes compensatory damages. *McDaniel v. Syed*, 115 F.4th 805, 823 n.12 (7th Cir. 2024) (citing *Cummings*, 596 U.S. at 230) ("A plaintiff can win compensatory damages under the Rehabilitation Act but not damages for emotional distress."). Nominal damages are also available in the alternative. *See* Restatement (Second) of Contracts § 346 (A.L.I. 1981); *cf. A.W. ex rel. J.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1314–15 (11th Cir. 2024) (remanding for consideration of whether damages for

---

[2] Both the Affordable Care Act, 42 U.S.C. § 18116, and the Rehabilitation Act, 29 U.S.C. § 794a, adopt the enforcement mechanisms and remedies available under Title VI of the Civil Rights Act of 1964. Title VI does not mention a private right of action, but the Supreme Court has found an implied right of action, *Cannon v. Univ. of Chi.*, 441 U.S. 677, 703 (1979), for which monetary damages are available, *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 71–73 (1992).

physical harm, lost educational benefits, remediation, and nominal damages were available).

Special rules—like recovery for emotional disturbance when the breach is "unusually evil," or for mental anguish when the breaching act also sounds in tort— are inapplicable. *Cummings*, 596 U.S. at 223–29. But mental distress is distinct from bodily injury and physical pain. 11 Corbin on Contracts § 59.1 ("Mental distress is not itself a pecuniary harm, and it can scarcely be said to be measurable in terms of money. Likewise, it must be differentiated from bodily injury and from the physical pain that a bodily injury may cause.").

Coachman alleges that Gateway denying him in-patient services significantly delayed his treatment, [23] ¶ 69, caused him to return to substance use, [23] ¶ 63, resulted in stress-induced headaches and high blood pressure, [23] ¶ 67, and forced him to forgo therapies better suited to his condition, [23] ¶¶ 70–79. While Coachman cannot recover (under federal law) for the stress he experienced, he can recover for the physical pain and suffering that Gateway's alleged discrimination caused. There may be recoverable value in the loss of opportunity to receive treatments offered by Gateway but not Haymarket—expectation damages traditionally seen in breach of contract actions. *See* 24 Williston on Contracts § 64:3 (4th ed.). Courts outside this circuit have similarly allowed for compensatory damages for lost opportunities, *Payan v. L.A. Cmty. Coll. Dist.*, 169 F.4th 971, 978–79 (9th Cir. 2026), and pain and suffering, to the extent the injuries are distinct from emotional distress, *Doe ex rel. Doe v. City of Pawtucket*, 633 F.Supp.3d 583, 590–91 (D.R.I. 2022). Those are all

injuries for which compensatory damages are traditionally available, and money damages are thus available for violations of the Rehabilitation Act and the Affordable Care Act that caused those injuries. *See Cummings*, 596 U.S. at 221. Coachman has established that he has standing to bring claims for monetary relief.

### 2. *Injunctive Relief*

To seek injunctive relief for future conduct under the disability-discrimination statutes, when a plaintiff can establish past injury, he must show that it is reasonable to infer from his complaint that this discriminatory treatment will continue and that he intends to return to the public accommodation in the future. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). "This is not to say that the possibility of future injury must be certain, but there must be at least a substantial risk that such harm will occur." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1019 (7th Cir. 2016). "Substantial risk" does not mean a very high probability. There is an injury to the plaintiff for the purposes of Article III "as long as there is some nonnegligible, nontheoretical, probability of harm that the plaintiff's suit if successful would redress." *Am. Bottom Conservancy v. U.S. Army Corps of Eng'rs*, 650 F.3d 652, 658 (7th Cir. 2011) (quoting *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 744 (7th Cir. 2007)). The test is "a question of plausible intent to return to the accommodation based on all the allegations and any inferences that follow." *Mosley v. Kohl's Dept. Stores, Inc.*, 942 F.3d 752, 759 (6th Cir. 2019).

I dismissed Coachman's original complaint because his need for in-patient treatment in the future was speculative, and no reasonable inference of intent to return to Gateway could be made. [22]. The First Amended Complaint now adds

9

allegations that Coachman already relapsed following his initial denial from Gateway, [23] ¶ 62, that Coachman expects to relapse, [23] ¶ 84, and that he would like to return to Gateway in the event of relapse because it is the provider best suited to treat his substance abuse, [23] ¶¶ 70–87. The prospective need for in-patient services is no longer speculative, but plausible.

Coachman seeks injunctive relief that would allow him equal access to Gateway's services—which are both local and covered by his insurance—if he needs them again. [23] ¶ C. That is distinct from cases like *Lujan*, wherein the plaintiffs' alleged injuries occurred in Egypt and Sri Lanka, countries the plaintiffs did not regularly visit and had no immediate plans to return to. *See Sierra Club v. Marita*, 46 F.3d 606, 612–13 (7th Cir. 1995).

The allegations in the First Amended Complaint support a plausible intent by Coachman to return to Gateway, absent their discriminatory policy. Coachman has a past injury, *see above* III.A.1, Gateway has not indicated that it will change its policy of refusing to treat blind individuals at its Taylor Street location, and Gateway is the only available substance-abuse treatment provider reasonably available to Coachman that has such an expansive range of services. Those allegations support a reasonable inference that Coachman continues to suffer an injury-in-fact sufficient to maintain an action for injunctive relief.

The other two requirements for standing—causation and redressability—are also met by the allegations in the First Amended Complaint. It is Gateway's policy

10

that is impeding Coachman from receiving the services he will need, and an order enjoining that policy would redress his injury. That is all Article III requires.[3]

### B. Sufficiency of Federal Claims

In its reply, Gateway raises a new argument challenging the sufficiency of Coachman's Rehabilitation Act and Affordable Care Act claims. Gateway contends that the allegations in the First Amended Complaint are inadequate because Coachman has not pled that he was discriminated against *solely* because of his blindness. Those arguments are forfeited, *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (arguments raised for the first time in the reply brief are waived because they leave no chance to respond), but they also fail on the merits.

To establish a violation of § 504 of the Rehabilitation Act, a plaintiff must show: (1) he was handicapped as defined by the Act; (2) he was otherwise qualified to participate in the program; (3) the program receives federal financial assistance; and (4) he was denied the benefits of the program solely because of his handicap. *Lewis v. Ind. Dep't of Transp.*, 173 F.4th 876, 882 (7th Cir. 2026). Stating a claim under § 1557 of the Affordable Care Act has the same standard as a claim under § 504 of the Rehabilitation Act. *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210 (9th Cir. 2020). Gateway only contests the fourth element. *See* [31] at 3–4.

The First Amended Complaint expressly alleges that "Gateway would not provide in-patient services to Mr. Coachman because Mr. Coachman was blind." [23]

---

[3] As the case proceeds, Coachman will need to establish, with evidence, the concrete injury he alleges; namely the likelihood of a relapse that would fit the services offered by Gateway and an intent to return to Gateway.

¶ 59. The further allegation that Gateway did not want to treat a blind patient because blind patients could be a liability, [23] ¶ 62, is just another way of saying that Gateway denied Coachman the benefits of its program because he was blind. It does not support an inference that Coachman was denied admission to the Taylor Street location because of anything other than his blindness.

Coachman also makes allegations about his attempts to be treated at Gateway's Aurora location, but he was unable to be admitted because there were no beds available. [23] ¶ 55. I do not read the First Amended Complaint to state a claim based on the Aurora facility's refusal to admit him. There is no allegation that the Aurora location refused to treat him—rather, he was redirected to the Taylor Street location because it could treat him sooner—and the delay in treating him was entirely due to a lack of beds, not his disability. Once he contacted the Taylor Street location, however, the facts alleged indicate that Coachman was denied solely based on his disability. Coachman has not pled himself out of court.

### C.      Civil Rights Remedies Restoration Act

#### 1.      *Spending Clause*

The Spending Clause of the United State Constitution provides that "Congress shall have Power … to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. Gateway argues that the Illinois Civil Rights Remedies Restoration Act violates the Spending Clause and is therefore unconstitutional. It is unclear whether Gateway intends to challenge the constitutionality of the statute facially—that is, contend the law is unconstitutional in every application—or as applied to the facts of the case under consideration. That

12

distinction is immaterial, however, because a state statute cannot violate the Spending Clause.

"Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. 598, 607 (2000).

> The same does not apply to the States, because the Constitution is not the source of their power. The Constitution may restrict state governments—as it does, for example, by forbidding them to deny any person the equal protection of the laws. But where such prohibitions do not apply, state governments do not need constitutional authorization to act.

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 535 (2012). In enacting the Civil Rights Remedies Restoration Act, the Illinois legislature acted under its general police powers. *See CTS Corp. v. Waldburger*, 573 U.S. 1, 19 (2014) ("In our federal system, there is no question that States possess the 'traditional authority to provide tort remedies to their citizens' as they see fit.") (quoting *Wos v. E.M.A.*, 568 U.S. 627, 640 (2013)). That Congress is limited to enacting laws pursuant to its enumerated powers is irrelevant and cannot render a validly promulgated state law unconstitutional.

### 2. *Preemption*

As presented by the parties, Gateway's "spending clause" challenge is better understood as arguing the Illinois Civil Rights Remedies Restoration Act is preempted by federal law. There are "three types of federal preemption: express preemption, field preemption, and conflict preemption." *Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 457 (7th Cir. 2023). Gateway argues that conflict preemption applies here. [25] at 9–10. Conflict preemption applies where either "(1) 'it is

13

impossible for a private party to comply with both state and federal requirements,' or (2) 'where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 578 (7th Cir. 2012) (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). In all preemption cases, I "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

Through the Rehabilitation Act and similar statutes, Congress "condition[ed] an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998). As mentioned above, those statutes have been read to include implied rights of action for private individuals, limited to damages "traditionally available in suits for breach of contract." *Id.* at 187. In response to the *Cummings* decision, Illinois enacted the Civil Rights Remedies Restoration Act "to restore in Illinois the full enjoyment of the civil rights unjustly limited by the U.S. Supreme Court in its decision in *Cummings*." 775 ILCS 60/10.

There is no preemption issue here. *Cummings* identifies a limitation on Congress's power to create remedies and poses no bar to Illinois implementing a distinct remedy under its police powers. And Gateway can comply with the Illinois Civil Rights Remedies Restoration Act without violating federal law—one only

14

violates the Illinois Act when they violate an enumerated federal statute. 775 ILCS 60/15.

That leaves the second form of conflict preemption: "obstacle" preemption. Gateway contends that by creating a remedy for emotional damages, Illinois functionally modifies a term of contract between the federal government and Gateway. [25] at 10–11. Gateway also argues, without citing any authority, that Illinois expanding remedies for violations of Spending Clause statutes would deter private entities from contracting with the federal government and thus impede Congress's objective of providing federal funding to entities like Gateway. [25] at 10–11.

Neither argument holds water. The standards imposed by the Illinois Act are identical to those imposed by federal law because the Illinois Act incorporates the relevant federal statutes by reference. By imposing the same duties as federal law, the Illinois Act has not modified the federal "contract." *See Wigod*, 673 F.3d at 580 (no preemption so long as state laws do not impose substantive duties beyond federal requirements). The possibility some entities will be discouraged from contracting with the federal government is not in conflict with any clear and manifest purpose of Congress. *See id.* (participation in federal program was not a paramount purpose overriding concerns about program compliance).

The Illinois Civil Rights Remedies Restoration Act is not preempted by federal law.

15

## IV.    Conclusion

Gateway's motion to dismiss, [24], is denied. The stay on discovery is lifted, Gateway must answer the complaint by June 22, 2026, and the parties shall file a joint status report by June 29, 2026, proposing a case schedule.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: June 1, 2026

16